OPINION JUDGMENT ENTRY
{¶ 1} Appellant Pamela Rivers ("mother") appeals the December 5, 2003 judgment entry entered by the Stark County Court of Common Pleas, Juvenile Division, granting permanent custody of her minor child to appellee-Stark County Department of Job and Family Services ("the Department").
 STATEMENT OF THE CASE AND FACTS {¶ 2} On September 23, 2002, the Department filed a complaint alleging abuse and seeking temporary custody of Noah Robinson (D.O.B. 9/19/02). The complaint was based upon both mother and Noah testing positive for cocaine at the Noah's birth. Mother admitted to using cocaine five to six days prior to the child's birth. Mother attended only three of her nine scheduled pre-natal appointments, and tested positive for cocaine at two of them. Additionally, mother had a criminal history which included prostitution, theft, possession of drug paraphernalia, and disorderly conduct. The trial court granted temporary custody of Noah to the Department at an Emergency Shelter Care hearing on September 25, 2002. Mother and the alleged father, Fred Strong, both stipulated to the trial court's temporary placement of Noah with the Department.[1]
 {¶ 3} The Department filed a Case Plan on October 17, 2002. On the same day, the trial court found Noah to be an abused child with regard to mother's interest, and continued placement of Noah in the temporary custody of the Department. Mother stipulated to the trial court's finding of abuse. Mother's Case Plan required her to undergo a psychological evaluation and follow all recommendations, substance abuse counseling and treatment, and parenting classes. At a Dispositional Review Hearing on March 19, 2003, the trial court found Mother was not visiting Noah and had fallen into a relapse with her drug abuse and was no longer involved at Quest Recovery Services. The trial court noted Mother had completed her psychological evaluation. The Department filed a motion for permanent custody on August 19, 2003.
 {¶ 4} The trial court's conducted a hearing on the Department's motion for permanent custody on November 25, 2003, and December 4, 2003. Elizabeth Parsons, an on-going Family Service worker with the Department assigned to the matter, testified regarding Mother's failure to complete her Case Plan. Parsons noted, although Mother completed her psychological evaluation, she did not follow the recommendations or involve herself in any of the services provided by the Department. Parson testified Mother did not complete the Goodwill Parenting Classes, and only attended the first class in February, 2003. Mother did not complete her evaluation at Quest Recovery Services, nor did she submit urine samples with the frequency ordered by the trial court. Parsons was unable to verify whether Mother had obtained stable and consistent housing.
 {¶ 5} Regarding the best interest, Parsons testified Noah is currently in a certified foster home, where he has been since his birth. Parsons stated Noah is doing well in the placement. Parsons acknowledged Noah has numerous health concerns, including Downs-Syndrome, a hole in his heart, and a heart murmur. Currently, Noah receives occupational therapy, physical therapy, and speech therapy. Noah is seen by pediatric cardiologist one or two times a month and is on medication for his heart problems.
 {¶ 6} Parsons further testified Noah is extremely bonded with his foster mother. Parsons observed Mother with Noah during the six visits Mother had with Noah between October 2002, and January 2003. During those visits, Mother was uncomfortable with the child, unsure of how to feed and change him. She sought direction with basic parenting skills.
 {¶ 7} Parsons added Noah is a very open and very friendly child, and is a high functioning Downs-Syndrome child. Although Noah's current foster mother has concerns about adopting him due to her age and his health, the foster mother is committed to providing care for Noah until an adoptive home is located. On cross-examination, Parsons confidently stated Noah would not be traumatized if removed from his current foster home.
 {¶ 8} Bernard Hunt, Noah's Guardian Ad Litem, recommended permanent custody be granted to the Department. In preparing his report, Hunt spoke with the on-going case worker, a representative from Goodwill Parenting, and the foster mother. Hunt also reviewed discovery from Nova. Hunt had not spoken with Mother for about six months at the time of the hearing. The two telephone numbers Mother provided to Hunt were disconnected or not working properly. When Hunt visited Mother's residence, he was unable to see her.
 {¶ 9} Via judgment entry filed December 4, 2003, the trial court terminated the Mother's parental rights, privileges and responsibilities, and granted permanent custody of Noah to the Department. On the same day, the trial court issued findings of fact and conclusions of law in support of his decision.
 {¶ 10} It is from this judgment entry Mother appeals raising as her sole assignment of error:
 {¶ 11} "The judgment fo the trial court that the best interests of the minor child would be served by the granting of permanent custody was against the manifest weight of the evidence."
 {¶ 12} This appeal is expedited, and is being considered pursuant to App. R. 11.2.
 I {¶ 13} In her sole assignment of error, mother maintains the trial court's finding the best interest of Noah would be served by granting permanent custody to the Department was against the manifest weight and sufficiency of the evidence. We disagree.
 {¶ 14} We are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v.Jeffries (Feb. 10, 1982), Stark App. No. CA5758, unreported. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence.C.E. Morris Co. v. Foley Constr. (1978), 54 Ohio St.2d 279.
 {¶ 15} R.C. 2151.414(B)(1) addresses under what circumstances a trial court may grant permanent custody. Such statute provides as follows:
 {¶ 16} "(B)(1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply: "(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents. "(b) The child is abandoned. "(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody. "(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999."
 {¶ 17} In its December 4, 2003 Findings of Fact and Conclusions of Law, the trial court found Noah was an abandoned child. Mother does not appeal this finding. Rather, mother challenges the trial court's finding it was in Noah's best interest to grant permanent custody to the Department.
 {¶ 18} In determining the best interest of the children, R.C.2151.414(D) provides: "the court must consider all relevant factors, including, but not limited to, the following:
"(1) The interaction and interrelationship of the child and his parents, siblings, relatives, foster parents and out-of-home providers, any other person who may significantly effect the child; "(2) The wishes of the child, as expressed directly or indirectly by the child or through his guardian ad litem, with due regard for the maturity of the child; "(3) The custodial history of the child; "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the Agency."
 {¶ 19} Mother argues the trial court's granting permanent custody of Noah to the Department was not in his best interest due to the foster mother's concerns about adopting the child, as well as Noah's health problems. The foster mother expressed concerns about adopting Noah due to her age. She feared if something happened to her, Noah would end up institutionalized because of his Downs-Syndrome. The foster mother informed the Department she wanted Noah to remain in her care until an adoptive home could be found for him. Furthermore, the foster mother is willing to assist in the transition of Noah from her home into a new home.
 {¶ 20} Elizabeth Parsons testified despite Noah's Downs-Syndrome he is adoptable. Parsons described Noah as a "very open and very friendly child", who is doing "very, very well". She added Noah is a high functioning Downs-Syndrome child and will function well in society. Parsons noted the Department was considering two or three homes at the time of the hearing.
 {¶ 21} We find the aforementioned testimony provided competent, credible evidence to support the trial court's conclusion the best interest of Noah would be served by granting permanent custody to the Department. Accordingly, we find the trial court's decision was not against the manifest weight or sufficiency of the evidence.
 {¶ 22} Mother's sole assignment of error is overruled.
 {¶ 23} The judgment of the Stark County Court of Common Pleas, Juvenile Division, is affirmed.
Judgment affirmed.
Wise and Edwards, JJ., concur.
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Stark County Court of Common Pleas, Juvenile Division, is affirmed.
[1] The father is not a party to this appeal.